NOT FOR PUBLICATION IN WEST'S HAWAI'I REPORTS AND PACIFIC REPORTER

**Electronically Filed
Intermediate Court of Appeals
CAAP-13-0000427
21-SEP-2016
08:59 AM**

NOS. CAAP-13-0000427 and CAAP-13-0000428

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

**NO. CAAP-13-0000427**
(TRUST NO. 06-1-0044)

In the Matter of the T.H.G. MARITAL TRUSTS

---

**NO. CAAP-13-0000428**
(TRUST NO. 02-1-0030)

In the Matter of the THOMAS H. GENTRY REVOCABLE TRUST

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT

MEMORANDUM OPINION
(By: Foley, Presiding J., Fujise and Reifurth, JJ.)

Petitioner-Appellant Kiana E. Gentry (**Kiana**) appeals from two judgments in separate but related trust cases, both titled "Final Judgment Re: Order Denying Petitioner Kiana E. Gentry's Petition to Enforce Settlement Agreement and Appoint Receiver, Filed on August 26, 2010" (together, **Enforcement Judgments**) and both entered on March 25, 2013 in the Circuit Court of the First Circuit[1] (**circuit court**). The Enforcement Judgments were entered in In re Thomas H. Gentry Revocable Trust, T. No. 02-1-0030 (**Revocable Trust Matter**) and In re T.H.G. Marital Trusts, T. No. 06-1-0044 (**Marital Trust Matter**), which involve the Thomas H. Gentry Revocable Trust (**Trust**) and one of the Trust's subtrusts, the T.H.G Marital Trust (**Marital Trust**).

---

[1]     The Honorable Derrick H.M. Chan presided, unless otherwise indicated.

On appeal, Kiana contends the circuit court erred in (1) denying her petitions seeking enforcement of the terms of a settlement agreement (**Petitions to Enforce**) and (2) refusing to hold an evidentiary hearing or trial after denying her Petitions to Enforce.

## I.   BACKGROUND

### A.   Trust Summary

In November 1994, Thomas H. Gentry (**Gentry**) was in a boating accident that left him in a coma until he passed away on January 15, 1998.  At the time of Gentry's accident, he was the trustee of the Revocable Trust.  The beneficiaries of the Trust included Norman H. Gentry, Tania V. Gentry, Mark T. Gentry, Corin S.N.M. Gentry-Balding, and Candes S.N.M. Gentry (Gentry's children from previous marriages), Kiana (Gentry's third spouse), Angel Vardas (Kiana's daughter from a previous marriage), Arielle Gentry and Race Gentry (Gentry's adult grandchildren), and all minor and unborn issue of Gentry.  After Gentry's death, Mark L. Vorsatz (**Vorsatz**) and the First Hawaiian Bank (**FHB**) (together, **Co-Trustees**) became trustees for the Trust.  The terms of the Trust were set forth in a trust document entitled, "Restatement of the Thomas H. Gentry Revocable Trust Dated February 11, 1986" (**Trust Document**).  In the Trust Document, Gentry instructed that "[t]he Trustee shall distribute the balance of the trust to my issue who survive me," subject to other conditions set forth in the document.

The Trust Document also provided for the creation of several subtrusts, including the Marital Trust.[2]  The Marital Trust names Gentry's spouse as the "primary beneficiary of the trust."  The conditions that Gentry established for the Marital Trust are as follows:

> 4.1  If my spouse survives me for any period of time (and my spouse shall be deemed to have survived me if we should die simultaneously or under such circumstances as to render it difficult or impossible to determine who survived the other), or if any of her issue survives me, the Trustee shall distribute one third of the trust estate (before reduction for any estate, inheritance, generation-skipping,

---

[2]      The other subtrusts of the Trust are a generation skipping subtrust (**GST**) and certain subtrusts for the children.

or other transfer taxes payable out of the trust estate) to
a separate trust, designated as the "Marital Trust[.]"

In January 1995, Norman H. Gentry, under durable power
of attorney for Gentry, petitioned the circuit court for the
formation of the Marital Trust.  The circuit court granted the
petition.[3]  Kiana was Gentry's spouse at the time of his death
and, therefore, became the sole beneficiary of the Marital Trust.

**B.  Procedural History**

On December 7, 2007, the Co-Trustees and beneficiaries
of the Trusts, including Kiana, (collectively, **Parties**) met
before the circuit court to review and agree upon the essential
terms of an agreement to settle various trust disputes.  At the
time the Parties met, they had filed various pleadings in the
Revocable Trust Matter and the Marital Trust Matter.  The two
cases were not consolidated in the circuit court.

On December 21, 2007, the Parties executed a written
settlement agreement (**Settlement Agreement**).  The Settlement
Agreement provided, "Unless otherwise dealt with in this
[Settlement] Agreement, all of the claims, objections and
responses filed in the [trial proceedings] will be dismissed with
prejudice[.]"

Central to this appeal are terms found in Paragraph 6
and 7 of the Settlement Agreement, which require the Co-Trustees
to sell certain assets owned by the Trusts within thirty months
from the December 21, 2007 effective date of the Settlement
Agreement.  In relevant part, the Settlement Agreement provides:

> 6.    ORDERLY DISPOSITION OF ASSETS.
>
> A.    The [P]arties agree to the orderly disposition
> of certain assets of the Trusts.  These assets are the
> Trusts' interests in TG California Company, Gentry-Pacific,
> Ltd., Gentry Properties and Gentry Homes, Ltd.  The Co-
> Trustees will sell these entities or their assets within a
> 30-month period from the Effective Date, with one 18-month
> extension permitted if supported by good cause as approved
> [sic] the Court.  One or more of Gentry's children and/or
> their issue are not prohibited from purchasing any entity or
> asset from the Trusts or from the entities for full fair
> market value.
>
> B.    With respect to the Trusts' ownership of
> Gentry-Pacific, Ltd., this interest will not be sold until
> Gentry Investment Properties or its assets have been sold.

---

[3]    The Honorable Herbert K. Shimabukuro presided.

> When Gentry Properties' assets are sold and that entity is liquidated, and all expenses associated with Gentry Properties are paid, Gentry Pacific will make a dividend distribution of all of its cash to the shareholders of Gentry Pacific. Thereafter, Gentry Investment Properties will make a guaranteed payment to Gentry-Pacific, Ltd., sufficient to cover Gentry-Pacific, Ltd.'s reasonable operating expenses for no longer than the aforesaid 30-month period.
>
> . . . .
>
> 7.   GENTRY INVESTMENT PROPERTIES.  Gentry Investment Properties [(GIP)] will not be subject to the disposition parameters of paragraph 6 above. As soon as practicable, the Trust's interests in GIP will be distributed to the marital subtrust, Gentry's Children (free of trust), and to the GST subtrust, Pro Rata. Gentry-Pacific, Ltd., will remain as the general partner of GIP for the aforesaid 30-month period. The [P]arties will use their best efforts to assure that Gentry-Pacific, Ltd., and/or GIP will not use GIP's accumulated income or sales proceeds to start or acquire any new businesses, or to acquire additional real property, or to construct intract improvements.  The intent of the [P]arties is that GIP will dispose of its assets over time (unspecified) in a commercially reasonable manner. In doing so, GIP is not precluded from constructing infrastructure in order to facilitate sales, provided, however, that such improvements may be made only to obtain a final subdivision map and/or to satisfy the requirements of specific buyers under written contracts or as required by law. Infrastructure includes, but is not limited to, roads, walkways, drainage systems, utilities and other construction consistent with the land use entitlements of the particular property being improved.  Obtaining a final subdivision map includes the ability to post or, if necessary, perform under a bond for the required public improvements.

On August 26, 2010, Kiana filed the Petitions to Enforce the terms of the Settlement Agreement in both the Revocable Trust Matter and the Marital Trust Matter, contending that the Co-Trustees had not disposed of the Trust Assets within the thirty-month deadline.  Kiana requested the circuit court order the Co-Trustees to abide by the terms of the Settlement Agreement, while identifying Paragraphs 6 and 7 as the specific provisions that she wished to have enforced.

On November 9, 2010, the Co-Trustees filed two nearly identical oppositions to Kiana's Petitions to Enforce in the Revocable Trust Matter and the Marital Trust Matter.  The Co-Trustees' oppositions stated that the Co-Trustees would file "a Petition for Instructions that details the steps they have taken in the administration of the Trust in general, and the implementation of the [S]ettlement [A]greement in particular." The Co-Trustees' oppositions also stated that the Co-Trustees'

petitions "will seek instructions for either (a) a distribution of the remaining trust assets to the beneficiaries and subtrusts on a pro-rata basis, or (b) an order approving their resignation and release and the appointment of a successor trustee(s)" (**Petition for Pro Rata Distribution**). A review of the record indicates that on December 1, 2010, the Co-Trustees only filed a Petition for Pro Rata Distribution in the Revocable Trust Matter, but not in the Marital Trust Matter.

The Co-Trustees' Petition for Pro Rata Distribution, filed in the Revocable Trust Matter, requested pro rata distribution of the remaining Trust Assets. Specifically, the Co-Trustees requested that one-third of the Trust's assets, which included interests in equities, real estate, and notes and receivables (collectively, **Trust Assets**), be distributed to Kiana as the sole beneficiary of the Marital Trust, while the remaining two-thirds of the Trust Assets be distributed to each of Gentry's five children.[4] In the alternative, if the beneficiaries of the Trust decided to proceed with the administration of the Trust, the Co-Trustees requested approval of their resignation as trustees.

On December 16, 2010, the circuit court held a hearing on Kiana's Petition to Enforce in the Marital Trust Matter. At the hearing, Kiana argued that the Co-Trustees should be ordered to liquidate or sell the Marital Trust Assets to satisfy the intent of the Settlement Agreement. The Co-Trustees, however, argued that they could not satisfy the terms of the Settlement Agreement because they had already failed to sell the Trust Assets within the thirty-month deadline and that various factors, including unfavorable market conditions, prevented them from selling the assets in the near future.

On October 7, 2011, the circuit court held another hearing on several petitions filed in the Revocable Trust Matter, including Kiana's Petition to Enforce and the Co-Trustee's Petition for Pro Rata Distribution.

---

[4] On February 3, 2011, the Co-Trustees filed a supplemental liquidation plan to their Petition for Pro Rata Distribution that further clarified the Co-Trustees' plan to dispose of the Trust Assets. Kiana objected to the Co-Trustees' liquidation plan on March 9, 2011.

On March 25, 2013, without explanation, the circuit court denied Kiana's two Petitions to Enforce in separate written orders and entered its Enforcement Judgments holding the same. On the same day and also without explanation, the circuit court issued an order and final judgment granting in part the Co-Trustee's Petition for Pro Rata Distribution in the Revocable Trust Matter (**Distribution Judgment**), thus permitting the Co-Trustees to make a pro rata distribution of the shares of certain Trust Assets without requiring the Co-Trustees to liquidate or sell the underlying asset. In part, the Distribution Judgment provided that of the 49,000 Gentry Pacific shares, 16,333.333 shares were to go to the Marital Trust while each of Gentry's five children would receive 6,533.333 shares. The Distribution Judgment also provided that of the Trust's ninety percent membership interest in Gentry Properties, a thirty percent membership interest was to go to the Marital Trust and each of Gentry's five children would receive a twelve percent membership interest.

On April 24, 2013, Kiana filed two separate notices of appeal from each of the Enforcement Judgments. Kiana did not appeal from the circuit court's Distribution Judgment in the Revocable Trust Matter.

## C. Appellate Court Review

In In re Gentry Revocable Trust, No. CAAP-13-0000428 (App. Oct. 22, 2014) (mem.), this court dismissed Kiana's Revocable Trust Matter appeal as moot because she failed to appeal the circuit court's Distribution Judgment along with the Enforcement Judgment. Id. at *4. The Hawai'i Supreme Court vacated our opinion and remanded this case to this court, holding that Kiana's appeal was not moot because (1) the circuit court retained the authority to vacate its Distribution Judgment if Kiana chose to seek post-judgment relief in the future; (2) the appellate courts can still grant Kiana relief by distributing the proceeds from the Trust Assets pro rata, instead of distributing the shares of the assets pro rata as ordered in the Distribution

Judgment;[5] and (3) Kiana's Petitions to Enforce embraced different subject matters than those disposed of in the circuit court's Distribution Judgment. In re Thomas H. Gentry Revocable Trust, 2016 WL 3541634, No. SCWC-13-0000428, *12-15 (June 28, 2016), reconsideration denied, 138 Hawai'i 50, 375 P.3d 1288 (2016).

On remand, this court consolidated the Revocable Trust Matter with the Marital Trust Matter.

## II.  STANDARD OF REVIEW

Appellate review of an order denying a motion to enforce a settlement agreement is the same as it would be for a motion for summary judgment. See Miller v. Manuel, 9 Haw. App. 56, 64, 828 P.2d 286, 292 (1991); see also Moran v. Guerreiro, 97 Hawai'i 354, 371, 37 P.3d 603, 620 (App. 2001). "A motion for summary judgment should not be granted where there is a factual question as to the existence, validity, and terms of the alleged settlement agreement, and where such a dispute exists, a trial or an evidentiary hearing to resolve the dispute is required." Gilmartin v. Abastillas, 10 Haw. App. 283, 296, 869 P.2d 1346, 1352 (1994); see Miller, 9 Haw. App. at 64-65, 828 P.2d at 292.

## III.  DISCUSSION

### A.  Validity and Enforceability of the Settlement Agreement

Kiana contends the circuit court erred when it denied her Petitions to Enforce. Kiana argues that "[s]ince the [circuit] court refused to enforce the Settlement Agreement, the only logical conclusion is that it found it invalid since all valid settlement agreements must be enforced." The circuit court, however, never made a finding of invalidity and the Co-Trustees do not dispute that the Settlement Agreement is valid and enforceable on appeal.

---

[5]    The Hawai'i Supreme Court noted "[t]he Distribution Judgment calls for shares of Gentry Pacific and Gentry Properties to be distributed among trustees—shares that no longer exist because the [Gentry Properties, GPP, Inc., and GPP Corporation (collectively, GPP Companies)] have been liquidated." In re Thomas H. Gentry Revocable Trust, No. SCWC-13-0000428 at *14.  The supreme court took judicial notice of a "certified copy of the warranty deed transferring the Gentry Pacific Design Center property from GPP to the Office of Hawaiian Affairs, recorded at the Land Court on August 20, 2012." Id. at *14 n.8.

While it is true that a circuit court may deny a motion to enforce a settlement agreement if the court finds the agreement is invalid or unenforceable, see Miller, 9 Haw. App. at 63-64, 828 P.2d at 291, that is not the only reason for a court to refuse to enforce such a motion.  For example, a court should refuse to grant a motion to enforce a settlement agreement if there remain questions of fact on how to interpret the terms of the settlement agreement. See Gilmartin, 10 Haw. App. at 296, 869 P.2d at 1352.  Therefore, Kiana's argument that "[s]ince the Co-Trustees agreed that the Settlement Agreement is enforceable, they should have been required to follow its terms" is without merit.

**B.  Genuine Issues of Material Fact**

Although both Parties agree that they are bound to the terms of the Settlement Agreement, they disagree on how to interpret the agreed upon terms.

As previously noted, a motion to enforce a settlement agreement should not be granted where there is a factual question as to the existence, validity, and terms of the alleged settlement agreement.  See Gilmartin, 10 Haw. App. at 296, 869 P.2d at 1352.  Because settlement agreements are a "species of contract law," we apply contract principles when interpreting the settlement agreement's terms.  See Wong v. Cayetano, 111 Hawai'i 462, 481, 143 P.3d 1, 20 (2006) (stating that settlement agreements are "simply a species of contract law"); see also Wittig v. Allianz, A.G., 112 Hawai'i 195, 201, 145 P.3d 738, 744 (App. 2006); Standard Mgmt., Inc. v. Kekona, 99 Hawai'i 125, 133-34, 53 P.3d 264, 272-73 (App. 2001).

> Where the terms of a contract are ambiguous, the ambiguity raises the question of the parties' intent, which is a question of fact that will often render summary judgment [or, in the case before us, enforcement of the settlement agreement] inappropriate. Found. Int'l, Inc. v. E.T. Ige Construction, Inc., 102 Hawai'i 487, 497, 78 P.3d 23, 33 (2003); Hanagami v. China Airlines, Ltd., 67 Haw. 357, 364, 688 P.2d 1139, 1145 (1984). If the language of a contract is unambiguous, however, the interpretation of the contract presents a question of law to be decided by the court. Found. Int'l, Inc., 102 Hawai'i at 497, 78 P.3d at 33; United States v. 0.35 Of An Acre Of Land, 706 F.Supp. 1064, 1070 (S.D.N.Y. 1988).
>
> In addition, the determination of whether a contract contains ambiguous terms is a threshold question of law for

the court to decide. <u>Found. Int'l, Inc.</u>, 102 Hawaiʻi at 496, 78 P.3d at 32; <u>0.35 Of An Acre Of Land</u>, 706 F.Supp. at 1070. A contract term or phrase is ambiguous only if it is capable of being reasonably understood in more than one way. <u>Cho Mark Oriental Food, Ltd. v. K & K Int'l</u>, 73 Haw. 509, 520, 836 P.2d 1057, 1063-64 (1992). The parties' disagreement over the meaning of a contract's terms does not render clear language ambiguous. <u>Found. Int'l, Inc.</u>, 102 Hawaiʻi at 497, 78 P.3d at 33. "Nor does ambiguity exist where one party's view strains the contract language beyond its reasonable and ordinary meaning." <u>Seiden Assocs., Inc. v. ANC Holdings, Inc.</u>, 959 F.2d 425, 428 (2d Cir. 1992) (quotation marks and brackets omitted). Under the parol evidence rule, the court may not resort to extrinsic evidence to determine the parties' intent where the contract's language is unambiguous. <u>Amfac, Inc. v. Waikiki Beachcomber Inv. Co.</u>, 74 Haw. 85, 124-25, 839 P.2d 10, 31 (1992).

<u>Wittig</u>, 112 Hawaiʻi at 201-02, 145 P.3d at 744-45; <u>see</u> <u>Miller</u>, 9 Haw. App. at 64, 828 P.2d at 292 (reviewing a motion to enforce a settlement agreement as if it were a motion for summary judgment).

The Settlement Agreement provides, in relevant part:

6. ORDERLY DISPOSITION OF ASSETS.

    A. The [P]arties agree to the orderly disposition of certain assets of the Trusts. These assets are the Trusts' interests in TG California Company, Gentry-Pacific, Ltd., Gentry Properties and Gentry Homes, Ltd. <u>The Co-Trustees will sell these entities or their assets within a 30-month period from the Effective Date, with one 18-month extension permitted if supported by good cause as approved the Court.</u> . . .

    B. <u>With respect to the Trusts' ownership of Gentry-Pacific, Ltd., this interest will not be sold until [GIP] or its assets have been sold.</u> When Gentry Properties' assets are sold and that entity is liquidated, and all expenses associated with Gentry Properties are paid, Gentry Pacific will make a dividend distribution of all of its cash to the shareholders of Gentry Pacific. Thereafter, Gentry Investment Properties will make a guaranteed payment to Gentry-Pacific, Ltd., sufficient to cover Gentry-Pacific, Ltd.'s reasonable operating expenses for no longer than the aforesaid 30-month period.

    . . . .

7. GENTRY INVESTMENT PROPERTIES. Gentry Investment Properties will not be subject to the disposition parameters of paragraph 6 above. <u>As soon as practicable, the Trust's interests in GIP will be distributed to the marital subtrust, Gentry's Children (free of trust), and to the GST subtrust, Pro Rata.</u> Gentry-Pacific, Ltd., will remain as the general partner of GIP for the aforesaid 30-month period. The [P]arties will use their best efforts to assure that Gentry-Pacific, Ltd., and/or GIP will not use GIP's accumulated income or sales proceeds to start or acquire any new businesses, or to acquire additional real property, or to construct intract improvements. The intent of the [P]arties is that GIP will dispose of its assets

over time (unspecified) in a commercially reasonable manner.

(Emphases added.)

The Co-Trustees argue that because they failed to sell the Trust Assets within the thirty-month time period, as required under the Paragraph 6(A), the terms of the Settlement Agreement "could no longer be accomplished" as Kiana requested. The Settlement Agreement is silent on what steps the Parties would take if the Co-Trustees did not meet the thirty-month deadline provided under Paragraph 6(A).[6] The uncertainty on how to proceed once the deadlines set forth in the Settlement Agreement can no longer be met creates an ambiguity in the Settlement Agreement. But cf. Eastman v. McGowan, 86 Hawai'i 21, 27-28, 946 P.2d 1317, 1323-24 (1997) (holding that a settlement agreement was unambiguous and there was no genuine issue of fact where the agreement stated that if defendants did not complete the condominium project and obtain a Certificate of Occupancy by a specific date, defendants were required to return the personal representative's downpayment and the estate would have no further obligations under agreement).

Furthermore, during the October 7, 2011 hearing before the circuit court, the Co-Trustees maintained that they could not sell GIP because third parties owned controlling interests in the company and the Co-Trustees could not "sell the stock of third-party shareholders who never signed the settlement agreement[.]"[7]

---

[6]  We note that on June 21, 2010, beneficiary Corin S.N.M. Gentry-Balding filed a petition requesting an eighteen-month extension for the Co-Trustees to effectuate the terms of the Settlement Agreement, as provided under Paragraph 6(A) of the Settlement Agreement. The petition stated "[g]ood cause exists for the extension because the administration is not complete, and the initial 30-month period of the Settlement Agreement will expire on June 21, 2010." Kiana opposed the petition, arguing that "(1) there is no provision within the Settlement Agreement that allows a beneficiary to petition this court for an extension of time to effectuate the terms of the Settlement Agreement; and (2) an extension of time will only increase the costs of administering the Trusts for the beneficiaries[.]" The circuit court denied the request for an extension and, on appeal, neither party argues that an eighteen-month extension should have been granted.

[7]  We note that the Co-Trustees' Petition for Pro Rata Distribution stated that "[a]t the time of execution of the Settlement Agreement, Gentry Pacific was the manager of GIP. Following the distribution of GIP to the
(continued...)

10

Kiana responded that GIP's controlling interests were in the hands of third parties because "the trustees took it upon themselves to issue a pro rata distribution of GIP during the pendency of the settlement period" and that it "was their doing, so they cannot now say that it's impossible because that was their doing." Kiana's position appears to ignore the terms of Paragraph 7 of the Settlement Agreement, which instructs that "[a]s soon as practicable, the Trust's interests in GIP will be distributed to the marital subtrust, Gentry's Children (free of trust), and to the GST subtrust, Pro Rata." If the Co-Trustees are unable to sell GIP because they adhered to the Settlement Agreement's requirement that they make a pro rata distribution of interests in GIP, then the Settlement Agreement's terms effectively undermine its own requirement that the Co-Trustees sell GIP. See In re Lock Revocable Living Trust, 109 Hawai'i 146, 152, 123 P.3d 1241, 1247 (2005) ("[A]n ambiguity arises from the use of words of doubtful or uncertain meaning or application." (quoting Hokama v. Relinc Corp., 57 Haw. 470, 474-75, 559 P.2d 279, 282 (1977)).

Although Kiana professes to want the Settlement Agreement "enforced in its entirety", her arguments in support of her Petitions to Enforce essentially ask the circuit court to order the sale of the Trust Assets irrespective of the limitations of Paragraph 6(B) and Paragraph 7. We find no authority for the circuit court to ignore one provision of the Settlement Agreement to effectuate another. To permit the circuit court to ignore the limitations of Paragraph 6(B) and Paragraph 7 would render the court guilty of "pick[ing] and choos[ing]" which provision of the Settlement Agreement to follow, just as Kiana alleges the Co-Trustees tried to do. The terms of the Settlement Agreement are ambiguous because there is uncertainty as to the interpretation of the terms of the

---

[7](...continued)
beneficiaries and subtrusts, a majority interest of GIP replaced Gentry Pacific with NTM LLC as manager." The Co-Trustees' Petition for Pro Rata Distribution also indicated that "GIP was distributed to the beneficiaries and subtrusts, and is no longer within the control of the Trust."

Settlement Agreement and it is unclear how the Parties intended to resolve such disputes when they entered into the agreement.

As this court acknowledged in Miller, a "motion to enforce settlement must be denied where it appears that there is a question of fact. A contrary conclusion would deny a litigant due process of law." Miller, 9 Haw. App. at 64, 828 P.2d at 292 (ellipsis and emphasis omitted) (quoting Mancina v. Hoar, 129 Cal. App.3d 796, 797 (Cal. Ct. App. 1982)). Because questions of fact remain on how to effect the terms of the Settlement Agreement, the circuit court did not err in denying Kiana's Petitions to Enforce. See Gilmartin, 10 Haw. App. at 296, 869 P.2d at 1352; cf. Hanagami, 67 Haw. at 363-64, 688 P.2d at 1144-45 (holding that the circuit court did not err in denying-in-part employer's motion for summary judgment where the terms of the indemnification clause were not "so definite and unambiguous that there [was] no room for interpretation"); Miller, 9 Haw. App. at 69-71, 828 P.2d at 294-95 (holding that the circuit court erred in granting a motion to enforce a settlement agreement where a question of fact remained as to whether there was a valid compromise agreement between the parties).

## C. Evidentiary Hearing

Kiana contends that, if there were questions of fact, the circuit court was required to hold an evidentiary hearing or jury trial before denying her Petitions to Enforce. When there is a genuine issue of material fact as to the terms of a settlement agreement, the court is required to hold a trial or an evidentiary hearing to resolve the dispute. Gilmartin, 10 Haw. App. at 296, 869 P.2d at 1352 ("A [motion to enforce a disputed settlement agreement] should not be granted where there is a factual question as to the existence, validity, and terms of the alleged settlement agreement, and where such a dispute exists, a trial or an evidentiary hearing to resolve the dispute is required."); see Miller, 9 Haw. App. at 71, 828 P.2d at 295 (holding that the lower court was required to hold a trial or evidentiary hearing where a question of fact remained as to whether there was a compromise agreement between the parties).

12

Kiana agreed to a jury-waived trial before entering into the Settlement Agreement. Therefore, Kiana was not entitled to a jury trial to resolve the issues of fact.[8] Cf. Moran, 97 Hawai'i at 371, 37 P.3d at 620 (noting that questions of fact may be decided by a jury "where the right to a jury trial has been asserted"). Kiana's waiver of her right to a jury trial does not obviate the need for an evidentiary hearing where genuine issues of fact remain and where Kiana requested a jury trial on the issues of fact presented by the Settlement Agreement. See Safeway, Inc. v. Nordic PCL Const., Inc., 130 Hawai'i 517, 532, 312 P.3d 1224, 1239 (App. 2013) (holding that the circuit court was required to hold an evidentiary hearing to resolve genuine issues of material fact as to the existence of an arbitration agreement, even if neither party to the alleged agreement requested a hearing); Miller, 9 Haw. App. at 65 n.9, 828 P.2d at 292 n.9 (rejecting Appellees' argument that Defendants had waived any right to an evidentiary hearing to resolve questions of fact as to the enforceability of a settlement agreement where Defendants' attorney "stated that her clients wished to speak on their own behalf at the hearing" and where Defendants expressed a desire "to go to trial and have a full hearing of all the claims").

Therefore, the circuit court erred in not holding an evidentiary hearing to resolve questions of fact regarding the interpretation and enforcement of ambiguous terms in the Settlement Agreement. See Gilmartin, 10 Haw. App. at 296, 869 P.2d at 1352; see also Miller, 9 Haw. App. at 69-71, 828 P.2d at 294-95.

We remand these consolidated cases back to the circuit court for an evidentiary hearing on any ambiguous terms, including any provisions that may prevent the Co-Trustees from effectuating the terms of the Settlement Agreement. To the

---

[8]     Although Kiana preferred to resolve the Settlement Agreement disputes through mediation, the record indicates that Kiana's counsel orally requested a jury trial to resolve questions relating to the interpretation of the Settlement Agreement's terms.

extent that the satisfaction of the Settlement Agreement may be impacted by the circuit court's unchallenged Distribution Judgment, we direct the circuit court's attention to the recent Supreme Court of Hawai'i opinion, In re Thomas H. Gentry Revocable Trust, 2016 WL 3541634, No. SCWC-13-0000428, for guidance.

## IV. CONCLUSION

The "Final Judgment Re: Order Denying Petitioner Kiana E. Gentry's Petition to Enforce Settlement Agreement and Appoint Receiver, Filed on August 26, 2010" entered in In re Thomas H. Gentry Revocable Trust, T. No. 02-1-0030 and the "Final Judgment Re: Order Denying Petitioner Kiana E. Gentry's Petition to Enforce Settlement Agreement and Appoint Receiver, filed on August 26, 2010" entered in In re Thomas H. Gentry Revocable Trust, T. No. 02-1-0030, both entered on March 25, 2013 in the Circuit Court of the First Circuit are vacated and these cases are remanded for proceedings consistent with this opinion.

DATED: Honolulu, Hawai'i, September 21, 2016.

On the briefs:

Margery S. Bronster
Jae B. Park
(Bronster Hoshibata)
for Petitioner-Appellant Kiana E.
Gentry.

Carroll S. Taylor
(Law Office of Taylor, Leong & Chee)
for Respondents-Appellees Mark L.
Vorsatz and First Hawaiian Bank,
and
Alan T. Yoshitake
(Seyfarth Shaw)
for Respondent-Appellee First
Hawaiian Bank.

Presiding Judge

Associate Judge

Associate Judge

14